CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 16, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| NAJEE FANIQUE HAIRSTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:24-cv-00778 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DREW SHELTON, | ) | By:  Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff Najee Fanique Hariston, proceeding *pro se*, filed a civil-rights action asserting claims under 42 U.S.C. § 1983 against Defendant Drew Shelton. (*See* Am. Compl. [ECF No. 8].) This matter is before the court on Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 21) and Defendant's motion to dismiss for failure to state a claim (ECF No. 14). For the reasons discussed below, Plaintiff's motion will be granted and Defendant's motion to dismiss will be denied.

### PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

At the time Plaintiff filed this action, he was incarcerated at the Danville Adult Detention Center. (*See* Compl. 1 [ECF No. 1].) Because Plaintiff filed the action without prepaying the filing fee, the court considered Plaintiff's eligibility to proceed with the action *in forma pauperis*. (*See* Order, Nov. 7, 2024 [ECF No. 3].) After reviewing Plaintiff's prisoner trust account report and concluding that he lacked the funds to pay the full filing fee and for service of process, the court granted Plaintiff leave to proceed *in forma pauperis* and thus to pay the filing fee in installments. (*See* Order, Dec. 19, 2024 [ECF No. 9].)

On April 10, 2025, the court became aware that Plaintiff had been released from incarceration and was no longer subject to the provisions of the Prison Litigation Reform Act that allowed him to pay the filing fee in installments. (Order, Apr. 10, 2025 [ECF No. 20].) The court therefore assessed Plaintiff the $350 filing fee and $55 administrative fee and directed Plaintiff to either pay the full $405 fee or otherwise respond to the court's order within 30 days. (*Id.* at 1.) Plaintiff timely responded to the court's order by filing an application to proceed without prepaying fees or costs. (Pl.'s Mot. for Leave to Proceed IFP [ECF No. 21].) Because it appears from Plaintiff's application that he lacks sufficient funds to pay the full filing fee and administrative fee, the court will grant Plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1).

## DEFENDANT'S MOTION TO DISMISS

### I.

In his amended complaint, Plaintiff alleges that, the week of September 20, 2024, while incarcerated at Danville Adult Detention Center ("DADC"), he sustained a spider bite below his right knee. (Attach. to Am. Compl. 1 [ECF No. 8-1].) One day after he was bitten, the bite wound became "very itchy and irritated," prompting Plaintiff to file a medical request with Defendant Shelton, a nurse at DADC. (*Id.*) Three days later, Plaintiff had not received any response from Shelton and his symptoms had worsened. (*Id.*) Accordingly, Plaintiff visited the medical room to see Shelton. (*Id.*) Shelton examined him and, after viewing the bite mark, told Plaintiff he was going to prescribe Plaintiff an antibiotic pill, "Bactrum," beginning at that evening's medical call. (*Id.*)

The night following his visit with Shelton, Plaintiff went to medical call, expecting to receive one antibiotic pill and one does of ibuprofen that he was receiving for an unrelated issue. (*Id.*) But when he received his pills, Plaintiff noted that both pills looked the same. (*Id.*) Plaintiff immediately asked the officer distributing the medicines to describe the label of the package of the pill that was supposed to be his antibiotic. (*Id.*) The officer both told Plaintiff that it said "Bactrum" and showed Plaintiff the label so Plaintiff could confirm for himself. (*Id.*) After reviewing the label, Plaintiff took the two pills he was given and proceeded to take the similar looking pills twice a day for the next two days. (*Id.*)

Despite taking the medications given to him, Plaintiff's leg grew worse. (*Id.*) His wound showed further signs of infection; it was swelling and leaking puss. (*Id.*) The following morning, Plaintiff told the officer who distributed his pills, Officer Childress, that his leg was getting worse, that it was so painful he had difficulty walking, and that he needed medical attention. (*Id.* at 2.) He also inspected the pills closely and noted that both appeared to have the same stamp imprinted on them. (*Id.*) Plaintiff told Officer Childress that the pills looked exactly the same and, after examining the pills, the officer agreed. (*Id.*) Childress then observed that all the pills in the "Bactrum" package looked the same and were stamped as Ibuprofen 800. (*Id.*) Childress directed Plaintiff not to take the pills and to let him talk to Shelton once he arrived at DADC. (*Id.*)

When Plaintiff had not heard from Shelton by the lunchtime medical call, he went to the medical unit to see if Shelton had arrived. (*Id.*) Plaintiff found Shelton and asked him whether Childress had spoken to him about the pill issue. (*Id.*) Shelton responded "in a laughing [manner]," saying that he had "fucked up and was rushing when [he] packaged

- 3 -

[Plaintiff's] pills and packed the wrong pills." (*Id.*) Shelton then gave Plaintiff another pill that looked different from the ibuprofen pills and told Plaintiff to take it, assuring him that it was "the right one this time." (*Id.* at 3.)

Plaintiff continued taking the new pill twice a day for three days, but his leg continued to swell and the wound became larger and deeper. (*Id.*) When Plaintiff was sent out to cut grass, he "could barely even walk." (*Id.*) Plaintiff continued writing to Shelton about his condition, seeking immediate medical attention, but his requests went unanswered. (*Id.*) Plaintiff then wrote multiple requests to Major Witcher, who was "at the top of command" since the warden was away at the time. (*Id.*) The requests to Witcher also went unanswered. (*Id.*)

On October 6, 2024, Plaintiff filed a request asking for a § 1983 form. (*Id.*) The next morning, Shelton called him to come to the medical room. (*Id.*) When Plaintiff got there, he sat down and noticed there were more officers present than was typical for a medical visit. (*Id.*) Plaintiff asked what was happening and whether he was "in trouble or something," and Shelton responded, "We want to see your leg Mr. 1983 form." (*Id.*) Plaintiff pulled up his pant leg to reveal the bandaged wound, and Shelton "snatched off the bandage . . . in a very aggressive manner." (*Id.* at 3–4.) Shelton then told Plaintiff that he had MRSA,[1] that it was contagious, and that he needed to be isolated in segregation. (*Id.* at 4.)

Plaintiff was placed in isolation, where he remained until October 9, 2024, when he was called to see Dr. Wang. (*Id.*) Dr. Wang looked at Plaintiff's leg and asked him how long it had been like that. (*Id.*) Plaintiff told him it had been about two weeks. (*Id.*) Dr. Wang squeezed

---

[1] "MRSA" stands for methicillin-resistant staphylococcus aureus.

puss from the wound, re-bandaged it, and sent Plaintiff back to isolation. (*Id.*) Plaintiff never had any blood drawn or any other test performed to show that he had MRSA. (*Id.*) Thereafter, Plaintiff was prescribed another pill, along with the Bactrum, that he was directed to take for a week. (*Id.*) Though it appears from his amended complaint that the infection ultimately cleared, Plaintiff alleges that, as of mid-December 2024, when he filed his amended complaint, his leg still felt weak and he feared the infection had caused internal damage. (*Id.*)

Defendant has moved to dismiss Plaintiff's claims against him under Federal Rule of Civil Procedure 12(b)(6) (*see* ECF No. 14), and Defendant's motion is ripe for review.

## II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). And because Plaintiff is proceeding *pro se*, the allegations are construed "liberally" in his favor. *Shaw*, 59 F.4th at 127. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief" as required by Rule 8. *Iqbal*, 556 U.S. at 679 (cleaned up).

Nevertheless, when a prisoner files his complaint *pro se*, the court liberally construes the allegations in his favor and should not dismiss his claims unless "it appears certain that [he] cannot prove any set of facts in support of his claim entitling him to relief." *Shaw v. Foreman*, 59 F.4th 121, 126–27 (4th Cir. 2023). And when an action implicates civil-rights interests, the court "must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Id.*

### III.

Plaintiff's claims arise under 42 U.S.C. § 1983, which authorizes a civil action by a citizen deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws

of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

The court construes Plaintiff's complaint as alleging that Defendant was deliberately indifferent to his medical needs. When a plaintiff was a pretrial detainee at the time of the alleged deliberate indifference, his claims arise under the Fourteenth Amendment, which protects pretrial detainees from governmental actions that are "not rationally related to a legitimate nonpunitive purpose or that [are] excessive in relation to that purpose." *Jenkins v. Woodard*, 109 F.4th 242, 250 n.3 (4th Cir. 2024) (quoting *Short v. Hartman*, 87 F.4th 593, 599); *see Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) ("[S]ince [the plaintiff] was a pretrial detainee and not a convicted prisoner, the Fourteenth Amendment, and not the Eighth Amendment, governs his claim." (cleaned up)). When the plaintiff was a convicted prisoner at the time of the alleged indifference, however, his claims arise under the Eighth Amendment's prohibition on cruel and unusual punishment. *See Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) ("Because 'adequate . . . medical care' is a basic condition of humane confinement, a prison official's 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994))).

Plaintiff does not clearly allege whether he was a pretrial detainee or a convicted prisoner at the time of the events described in the complaint. However, Defendant has offered state court records showing that Plaintiff had been convicted and was serving a 12-month

sentence at the time the relevant events occurred.[2] (*See* Ex. A to Memo. in Supp. of Defs.' Mot. to Dismiss [ECF No. 15-1].) Although the court ordinarily does not consider outside materials in deciding a motion to dismiss, the court can and does take judicial notice of these publicly available court records. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that "the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records"). Considering these records, the court concludes that Plaintiff was a convicted prisoner at the time of the events described in the complaint, and his claims of deliberate indifference are therefore governed by the Eighth Amendment. *See Pfaller*, 55 F.4th at 445.

To establish a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, a prisoner must allege facts sufficient to show that (1) the deprivation was sufficiently serious and (2) the prison officials acted with a sufficiently culpable state of mind toward the prisoner's medical needs. *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). To satisfy the second prong, the plaintiff must allege that the official (a) had "actual knowledge of the risk of harm to the inmate" and (b) "recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." *Id.* (citations omitted). Put simply, a defendant "acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Gordon v. Schilling*, 937 F.3d 348, 357 (4th Cir. 2019) (citing *DePaola v. Clarke*,

---

[2] In his response to Defendant's motion to dismiss, Plaintiff does not dispute Defendant's assertion that he was a prisoner rather than a pretrial detainee during the relevant period. (*See generally* Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss [ECF No. 17].)

- 8 -

884 F.3d 481, 486 (4th Cir. 2018)). And although the defendant need not act with "actual purposive intent," "mere negligence" is not enough. *Pfaller*, 55 F.4th at 445 (citation omitted).

Defendant Shelton challenges Plaintiff's claim on both prongs. (*See* Memo. in Supp. of Def.'s Mot. to Dismiss 5–9 [ECF No. 15].) First, Shelton claims that Plaintiff fails to allege that he had a serious medical need. For purposes of an Eighth Amendment deliberate-indifference claim, "a serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citations and internal quotation marks omitted).

Shelton's argument narrowly focuses on Plaintiff's allegation that he initially suffered a spider bite that caused itching and irritated skin and swelling, claiming this condition alone is not sufficiently serious to support a deliberate-indifference claim. (Memo. in Supp. of Def.'s Mot. to Dismiss 5.) In so doing, Defendant glosses over Plaintiff's allegations about the subsequent infection, swelling, pain, and difficulty walking. (*See id.*) And none of the cases Shelton cites hold that a spider bite, infection, or MRSA are not sufficiently serious medical conditions to support an Eighth Amendment claim. (*See* Memo. in Supp. of Def.'s Mot. to Dismiss 6.) Instead, these cases address medical conditions wholly unrelated to this case.

More relevant cases hold otherwise. While courts have found that routine spider bites that do not become infected and merely irritate the skin do not constitute serious medical needs, federal courts have found that bites resulting in prolonged, painful infections are sufficiently serious to support constitutional claims. *See, e.g.*, *Bayete v. Ricci*, No. CIV.A. 08-3941 (GEB), 2009 WL 2066879, at *6 (D.N.J. July 10, 2009), *aff'd*, 489 F. App'x 540 (3d Cir. 2012)

(holding allegations the plaintiff's spider bite resulted in bacterial infection, accompanied by pain, swelling, and "increasing pain and suffering" based on delay in receiving medical care were sufficient to satisfy the first prong of an Eighth Amendment claim); *Clark v. Harrington*, No. 16-CV-00507-SMY, 2016 WL 3254550, at *2 (S.D. Ill. June 14, 2016) (finding complaint had stated a claim for deliberate indifference based on allegations that the plaintiff informed defendants "that he was suffering from excruciating pain as a result of a suspected spider bite or staph infection and needed immediate medical care" and that the defendants "allegedly ignored his requests or unreasonably delayed treatment"); *Matthews v. Illinois Dep't of Corr.*, No. 16-CV-11214, 2024 WL 867087, at *6 (N.D. Ill. Feb. 29, 2024) (holding there was "at least a question of fact as to whether the spider bite and resulting MRSA infection constitute a serious medical condition" given evidence that the plaintiff's foot "had an open wound and was swollen to the point where he could not put shoes on"). Moreover, Plaintiff's condition was one that, days later, was diagnosed by a physician as requiring treatment. (*See* Attach. to Am. Compl. 4.) Construing the allegations in Plaintiff's favor, the court is satisfied that Plaintiff has alleged that he suffered from a serious medical condition.

Shelton next argues that Plaintiff's allegations do not show that Shelton acted with deliberate indifference. (Memo. in Supp. of Def.'s Mot. to Dismiss 7–8.) The court agrees with Shelton that any claim based on the pill mix-up relies on Shelton's negligence rather than his disregard of a known risk and does not rise to the level of a constitutional violation. *See Pfaller*, 55 F.4th at 445; *Watkins v. Jones*, No. CV 0:17-135-MGL-PJG, 2018 WL 5631624, at *4 (D.S.C. Oct. 31, 2018), *report and recommendation adopted*, No. CV 0:17-135-MGL-PJG, 2018 WL 6241442 (D.S.C. Nov. 29, 2018), *appeal dismissed and remanded*, 764 F. App'x 365 (4th Cir. 2019)

("[T]he United States Court of Appeals for the Fourth Circuit as well as courts in this district have routinely held that accidentally providing an inmate with the wrong medication does not rise to the level of a constitutional violation." (collecting cases)). But the court disagrees with Shelton's assessment that Plaintiff has no plausible claim based on the delay in receiving medical treatment *after* the pill mix-up was resolved. (*See* Memo. in Supp. of Def.'s Mot. to Dismiss 8–9.)

The Fourth Circuit has held that, while "commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation," such a violation does occur "where the delay itself places the prisoner at a 'substantial risk of serious harm,' such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature." *Moskos v. Hardee*, 24 F.4th 289, 298 (4th Cir. 2022); *see also Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) ("The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." (emphasis in original)).

Shelton argues that, because Plaintiff received treatment within two weeks, any claim based on delay must fail. But "[c]ourts have also recognized that even brief, unexplained delays in treatment for pain may constitute deliberate indifference." *Allen v. Good*, No. 7:22-CV-00351, 2023 WL 5984287, at *5 (W.D. Va. Sept. 14, 2023) (collecting cases); *see also Smith-Bey v. Warden*, No. CV JKB-19-2375, 2020 WL 4569689, at *11 (D. Md. Aug. 6, 2020) ("Delaying treatment in the face of significant pain is harm sufficient to support a finding of deliberate indifference." (citing *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978); *Webb v. Hamidullah*,

281 F. App'x 159, 167 (4th Cir. 2008))). Plaintiff alleges that, by the time Shelton provided the correct antibiotic pills on or around September 26, 2024, his leg injury had worsened, his foot had swelled significantly, and the infection had caused an open, puss-filled wound that was "hurting so bad [he] could barely walk." (Attach. to Am. Compl. 1–2.) He also claims that, as of the first week of October, after days of taking the antibiotic with only worsening symptoms, he "was still writing request[s] to Nurse Shelton . . . about [Plaintiff] needing immediate medical attention." (*Id.* at 2–3.) Plaintiff adds that these requests went unanswered and that he received no additional medical treatment until October 7, 2024, the day after he had requested a § 1983 form. (*Id.* at 3–4.) Although the timeline in the complaint is not precise, construing the allegations in Plaintiff's favor, Plaintiff had been requesting immediate medical attention concerning the worsening infection in his leg for days—possibly a week—and did not receive any response to his requests until after he had requested a § 1983 form to file a lawsuit. (*See id.* at 2–4.) In light of Plaintiff's allegations about his pain, swelling, and difficulty ambulating, such a delay supports Plaintiff's claim that Shelton was deliberately indifferent to his serious medical needs.

Shelton also argues that the amended complaint lacks allegations that Shelton was responsible for any alleged delay. (Memo. in Supp. of Def.'s Mot. to Dismiss 8–9.) Not so. Plaintiff specifically alleges that Shelton had seen the infected wound and recognized it as requiring treatment by antibiotics, that Plaintiff sent unanswered requests for further medical attention to Shelton personally, and that Shelton was able to "immediately" announce that Plaintiff had MRSA upon seeing his wound days later. (Attach. to Am. Compl. 2–3.) Taking the allegations as true, Plaintiff has alleged that Shelton had actual knowledge of the risk of

harm and, given Shelton's awareness of Plaintiff's infection, need for antibiotics, and "immediate" diagnosis of MRSA after finally seeing Plaintiff on October 7, Shelton was aware of the risks to Plaintiff and yet disregarded them. *See Gordon*, 937 F.3d at 357.

Shelton's final argument in favor of dismissal rests on qualified immunity. There are two steps to a qualified-immunity analysis, and the court may address them in "whichever sequence will best facilitate the fair and efficient disposition of the case." *Pfaller*, 55 F.4th at 444 (citations, internal quotation marks, and alterations omitted). The first step asks whether the plaintiff has shown a violation of a constitutional right, and the second asks whether the right at issue was "clearly established" at the time of the defendant's misconduct. *Id.* (citing *Thompson v. Viriginia*, 878 F.3d 89, 97 (4th Cir. 2017)).

Here, the court has already concluded that Plaintiff has stated a claim for an Eighth Amendment violation. Accordingly, the only question remaining is whether the right violated was clearly established at the time of the events described in the complaint. *See id.* Though this inquiry requires the court to "pinpoint the precise constitutional right at issue," "there is no requirement that the very action in question must have previously been held unlawful for a reasonable official to have notice that his conduct violated that right." *Id.* at 445–46 (citations and internal quotation marks omitted). And the Fourth Circuit has recognized that "Eighth Amendment claims don't require the same level of specificity that is needed in, for example, the Fourth Amendment context." *Id.* at 445 (citing *Thorpe v. Clarke*, 37 F.4th 926, 940 (4th Cir. 2022)).

"A prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and [the Fourth] Circuit

since at least 1976." *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016). And in *Thorpe v. Clarke*, the court of appeals held that "when plaintiffs have made a showing sufficient to demonstrate an intentional violation of the Eighth Amendment, they have also made a showing sufficient to overcome any claim to qualified immunity." 37 F.4th at 934 ("[Q]ualified immunity does not shield those who knowingly violate the law." (cleaned up)). *Thorpe* "effectively collapsed qualified immunity's two inquiries into one, holding that dismissal on qualified-immunity grounds remains improper so long as the officers' mental state remains genuinely in issue." *Pfaller*, 55 F.4th at 445–46. Plaintiff has sufficiently alleged that Shelton acted with deliberate indifference in delaying treatment of Plaintiff's infection despite knowledge of Plaintiff's worsening condition and pain. This is enough to defeat Shelton's assertion of qualified immunity and find that Plaintiff has stated a viable claim for the violation of his Eighth Amendment right.

## IV.

For the reasons set forth above, the court will grant Plaintiff's motion for leave to proceed *in forma pauperis* and deny Defendant's motion to dismiss.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 16th day of September, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE